(74 App. Div. 255.)

LANCASTER et al. v. KNIGHT.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. JUDGMENT—PAYMENT.
    Plaintiffs loaned money to a corporation, and the president deposited certain stocks, his individual property, as collateral to the corporation's note. After maturity of the note, plaintiff obtained judgment thereon. The collateral was thereafter sold, and the proceeds delivered to the owner, who deposited with plaintiffs a sum equal to the amount of the judgment, taking a receipt in which plaintiffs agreed to accept the money so deposited as security for the payment of the judgment, and to take proceedings to recover from the company, or any stockholder thereof, the amount of their judgment, and that any sum collected was to be paid over to such president on demand, less the expense in-

curred in the collection thereof. ¡Held not to constitute a payment of the judgment by the corporation.

2. CORPORATION—STOCKHOLDERS—UNPAID STOCK—LIABILITY TO CREDITORS.

In 1898 defendant received from a corporation 60 shares of its capital stock as full paid, of the par value of $6,000, for which he paid $3,200. Thereafter in the same year the corporation became indebted to plaintiff in the sum of $500. Laws 1892, c. 688, § 54, provides that stockholders shall be personally liable to creditors to an amount equal to the amount of stock held by them, respectively, for every debt of the corporation, until the whole amount of its stock issued and outstanding at the time such debt was incurred shall have been fully paid. This section was amended by Laws 1901, c. 354, providing that every holder of capital stock not fully paid shall be personally liable to creditors, to an amount equal to the amount unpaid on the stock held by him, for debts contracted while such stock was held by him, and that as to existing corporations such liability shall be in lieu of the liability imposed on stockholders by law on account of debts hereafter contracted or stock hereafter issued. Section 5 provides that the act shall not affect any right of any creditor of any corporation or of any stockholder against any director under existing law, provided action thereon be commenced within six months after this act takes effect. Plaintiff brought his action within that time to recover the amount of such debt. ¡Held, that his right of action under section 54 was expressly saved by such section 5.

3. SAME—REPEAL OF STATUTE—EFFECT.

Assuming that the effect of Laws 1901, c. 354, was to repeal Laws 1892, c. 688, § 54, plaintiff's right of action was preserved by Laws 1892, c. 677, § 31, providing that the repeal of a law should not affect or impair any right accrued or liability incurred prior to the 'time such repeal takes effect.

Appeal from trial term, New York county.

Action by Robert A. Lancaster and others against Phillip M. Knight. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Ira G. Darrin, for appellants.
David Thornton, for respondent.

INGRAHAM, J. At the close of the testimony, counsel for the plaintiffs asked the court to direct a verdict for the plaintiffs. This motion was denied upon the ground that there was a question of fact, as to whether the judgment which the plaintiffs had obtained against the Metropolitan Messenger Company had been paid. The court submitted that question to the jury, saying:

"If the note was actually paid, and the parties have such interest as to distort and have distorted the transaction, then you will find a verdict for the defendant. If, on the other hand, the note has never been paid,—if it was an obligation of the corporation, and one which this defendant is liable for, being money used in the business in the corporation, and this note became a debt of the corporation,—then you will find a verdict for the plaintiffs for $540."

The jury found a verdict for the defendant. Thereafter the plaintiffs made a motion for a new trial on the ground that the verdict was contrary to the evidence, which was denied, and the plaintiffs appeal from the order denying the motion.

The first question presented is whether there was evidence to sustain the verdict. The action was brought by the plaintiffs, as judgment creditors of the Metropolitan Messenger Company, a corporation organized under the laws of this state, to enforce the obligation imposed upon the stockholders of the corporation by section 54 of the stock corporation law (chapter 688 of the Laws of 1892). That section provides:

"The stockholders of every corporation shall, jointly and severally, be personally liable to its creditors to an amount equal to the amount of the stock held by them, respectively, for every debt of the corporation, until the whole amount of its capital stock issued and outstanding at the time such debt was incurred shall have been paid."

It appeared and was not disputed that in April, 1898, the company issued to the defendant 30 shares of its capital stock, of the par value of $3,000, for which the defendant paid $1,500, and subsequently, in May, 1898, issued other certificates of stock, aggregating 30 shares, at the par value of $3,000, for which the defendant paid $1,700. It also appeared that the president of the corporation borrowed $500 from the plaintiffs, for which the corporation issued to the plaintiffs its promissory note, dated August 12, 1898; that plaintiffs' check for that amount was received by the president of the corporation, was delivered to its treasurer, and was indorsed and passed to the credit of the company in the bank account of the company in the Produce Exchange Trust Company. It also appeared that at the time of the making of the loan to the corporation the plaintiffs received from Klock, the president of the corporation, 25 shares of the stock of the Pennsylvania Railroad Company as security for that loan; that that stock was the individual property of Klock, he having deposited it with the plaintiffs to secure the repayment of the loan made to the corporation; that subsequently, and while the plaintiffs held Klock's stock as security for this loan to the corporation, they commenced an action against the corporation to recover the amount of this loan, and obtained a judgment against it for $540.48, upon which execution was issued, and returned unsatisfied. On November 2, 1889, after the plaintiff had obtained judgment against the corporation, Klock directed the plaintiffs to sell the Pennsylvania Railroad stock which he had deposited with them as collateral security for the loan, which stock was sold, and the proceeds turned over to Klock, whereupon Klock deposited with the plaintiffs the sum of $540.48, and took from them a receipt by which, after reciting the entry of this judgment, they agreed to accept the money so deposited with them by Klock as security for the payment of said judgment, and to take proceedings to recover from the company, or any stockholder thereof, the amount of their judgment, and that any sum collected was to be paid over to Klock upon demand, less the expense incurred in the collection thereof. It was this transaction which the court submitted to the jury, for them to determine whether or not it was a payment of the demand of these plaintiffs against the corporation. We think that the finding that this operated as a payment to the plaintiffs of their demand against the corporation was not only not sus-

tained by the evidence, but that there was no evidence of such a payment which justified the court in submitting the question to the jury. There is not the slightest evidence that the corporation ever paid this judgment, or any part thereof. The plaintiffs called Klock as a witness, and he testified, without contradiction, that the stock deposited with the plaintiffs to secure the loan made to the company was his individual property, in which the ·company had no interest. The proceeds of that stock, when sold, belonged to Klock, and not to the company; and, considering that the plaintiffs held a portion of the proceeds of that stock as security for its judgment against the company, that was not a payment of the judgment, so as to discharge the company's liability therefor. Whether Klock was believed or not, there was absolutely no evidence to sustain a finding that the company had paid the judgment, or discharged its obligation to the plaintiffs. We think, therefore, that the finding was entirely without support from the evidence.

The defendant also claims that at the time this action was commenced there was no statute in force under which he was liable to a creditor of the corporation. It did not appear when the Metropolitan Messenger Company was incorporated, or under what act; the allegations of the complaint being that it is a corporation organized and existing under the laws of the state of New York, and was engaged in business in the county of New York from about October 6, 1896, to December 12, 1898. It seems that on the 17th day of March, 1897, the capital stock of the company was increased from $10,000 to $60,000 (Hallett v. Messenger Co., 69 App. Div. 258, 74 N. Y. Supp. 639); that such increase consisted of 500 shares, of the par value of $100 each; that of that 500 shares there were transferred to the defendant 60 shares, of the par value of $6,000, for which the defendant paid to the company the sum of $3,200, leaving unpaid therefrom the sum of $2,800. Of this, 30 shares were transferred and delivered to the defendant on the 2d day of April, 1898, for which he paid $1,500, and 30 shares were delivered to the defendant on May 19, 1898, for which he paid $1,700. The indebtedness to the plaintiffs was incurred on August 12, 1898, and the judgment against the corporation upon that indebtedness was entered on April 3, 1899. At the time this corporation commenced to do business, and during the period that this indebtedness was incurred and this stock issued, section 54 of the stock corporation law (chapter 688 of the Laws of 1892) was in force. That section provides:

"The stockholders of every stock corporation shall jointly and severally be personally liable to its creditors to an amount equal to the amount of stock held by them respectively for every debt of the corporation until the whole amount of its capital stock issued and outstanding at the time such debt was incurred shall have been fully paid."

There would seem to be no doubt but that under this statute the defendant would be liable to the plaintiffs for the full amount of the judgment against the corporation. In 1901 this section of the stock corporation law was amended by chapter 354 of the Laws of that year. As amended, this section reads as follows:

"Every holder of capital stock not fully paid, in any stock corporation, shall be personally liable to its creditors, to an amount equal to the amount unpaid on the stock held by him, for debts · of the corporation contracted while such stock was held by him. As to existing corporations the liability imposed by this section shall be in lieu of the liability imposed upon stockholders of any existing corporation, under any general or special law, * * * on account of any indebtedness hereafter contracted or any stock hereafter issued."

By section 5 of this act it is provided:

"This act shall take effect immediately, but shall not affect any action or proceeding pending in any court at the time it takes effect or any right of any creditor of any corporation or of any stockholder against any director under existing law, providing action thereon be commenced within six months after this act takes effect, except as in this act otherwise provided."

The act took effect on April 16, 1901, and this action was commenced on the 13th day of September, 1901,—within six months from the time the amendment of 1901 took effect.

The defendant being liable to the plaintiffs at the time this indebtedness was incurred, under the provision of section 54 of the stock corporation law, to which attention has been called, the question is whether this amendment of the section repealed the law which imposed such liability, so that such liability terminated upon the passage of the act of 1901. Now, so far as the liability of this defendant to the plaintiffs is concerned, the defendant was liable either under the section in force at the time the indebtedness was contracted, or under the one in force after the amendment, when the action was commenced. The act of 1901 restricted the liability of a stockholder as it existed under the provision of section 54. In one case the stockholder was liable, to an amount equal to the amount of stock held by him, for every debt of the corporation, until the whole amount of its capital stock issued and outstanding at the time such debt was incurred should have been fully paid. Under the section as amended, the defendant, as a holder of capital stock not fully paid, was personally liable to the plaintiffs to an amount equal to the amount unpaid on the stock held by him. So under both provisions of law the defendant would be liable, and under the provision of section 5 of the act the intention was clearly expressed that the amendment should not affect the right of any creditor of a corporation.

The defendant claims that this provision only applied to the action of a creditor against a director under the existing law; but it would seem as though it was the intention of the legislature to protect all the rights of the creditors of a corporation, and the rights of a stockholder against a director. Section 31 of the statutory construction law (chapter 677 of the Laws of 1892) provides that the repeal of a law "shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected"; and assuming that this amendment of the act of 1901 would be to repeal section 54 of the stock corporation law, under this provision of the statutory

construction law the repeal of the section would not affect the right of a creditor to enforce the obligation of stockholders which existed at the time the amendment took effect.

We think, therefore, that the defendant was liable to the plaintiffs for the amount of the judgment against the corporation, and that the verdict of the jury that the debt had been paid was clearly against the weight of evidence. It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.